UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
FRADEL CIMENT,

                                        Plaintiff,

        - against -                                                **OPINION & ORDER**

TRANSUNION, LLC, EQUIFAX                                 No. 24-CV-212 (CS)
INFORMATION SERVICES, LLC, EXPERIAN
INFORMATION SOLUTIONS, INC., and
JPMORGAN CHASE BANK, N.A.,

                                        Defendants.
-------------------------------------------------------------x

Appearances:

Rami Salim
Stein Saks, PLLC
Hackensack, New Jersey
*Counsel for Plaintiff*

Andrew G. Hope
Buchanan Ingersoll & Rooney P.C.
Pittsburgh, Pennsylvania
*Counsel for Defendant TransUnion, LLC*

Jonathan Craig Roffe
Clark Hill PLC
Birmingham, Michigan
*Counsel for Defendant Equifax Information Services, LLC*

Patrick L. Wright
Jones Day
New York, New York
*Counsel for Defendant Experian Information Solutions, Inc.*

Ryan Sirianni
Greenberg Traurig, LLP
Garden City, New York
*Counsel for Defendant JPMorgan Chase Bank, N.A.*

Seibel, J.

Defendant JPMorgan Chase Bank, N.A. ("Chase"), and Defendants TransUnion, LLC,

Equifax Information Services, LLC, and Experian Information Solutions, Inc., (collectively, the

"CRAs" and together with Chase, the "Defendants"),[1] have moved to dismiss Plaintiff's First

Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF Nos. 45, 47.)

For the reasons set forth below, Defendants' motions are GRANTED.

## I.    **BACKGROUND**

For purposes of these motions, the Court accepts as true the facts, but not the conclusions,

alleged in the First Amended Complaint.  (*See* ECF No. 42 ("FAC").)

### A.    **Facts**

This lawsuit pertains to two of Plaintiff's Chase credit card accounts, one ending in 557

and the other ending in 323 (together, the "Accounts"), that were charged off.  (FAC ¶¶ 17, 19.)

To "charge off" is "to treat (an account receivable) as a loss or expense because payment is

unlikely; to treat as a bad debt."  *Charge Off*, Black's Law Dictionary (12th ed. 2024).  In other

words, "a creditor charging off or writing off a debt is simply an internal accounting action by

which the creditor stops carrying the debt as a receivable because the chances of collecting it are

so low."  *Ostreicher v. Chase Bank USA, N.A.*, No. 19-CV-8175, 2020 WL 6809059, at *4

(S.D.N.Y. Nov. 19, 2020); *see Artemov v. TransUnion, LLC*, No. 20-CV-1892, 2020 WL

5211068, at *3 (E.D.N.Y. Sept. 1, 2020) ("[C]harging off a debt is a business practice where a

creditor writes off a debt and no longer considers the account balance an asset for accounting

---

[1] "CRA" is short for credit reporting agency.

purposes.").[2]  Federal regulations require banks to charge off debt that is past due by more than 180 days so that their balance sheets do not "misleadingly reflect accounts as assets that have little chance of achieving their full valuation," *Artemov*, 2020 WL 5211068, at *3, but a charge off "does not equate to debt forgiveness" and "does not diminish the legal right of the original creditor to collect the full amount of the debt," *id.* at *4.  Charge offs are "one of the most adverse factors that can be listed on a credit report."  *Id.*

Chase informed the CRAs that both accounts were charged off in 2019, and the CRAs began reporting that information.  (FAC ¶¶ 19-20.)  Chase continued furnishing the same information through July 2021, and during that time the CRAs continued to show the Accounts as charged off.  (*Id.* ¶¶ 21-22.)  Plaintiff alleges on information and belief that after July 2021, Chase stopped furnishing information to the CRAs, (*id.* ¶ 23), and the CRAs did not report the Accounts as charged off for the next two years, (*id.* ¶ 24).  In August 2023, Chase again began reporting to the CRAs that the Accounts were charged off, and the CRAs again began reporting the Accounts as such.  (*Id.* ¶¶ 25-26.)  Plaintiff took no action to cause the Defendants to stop reporting the Accounts as charged off back in August 2021, nor any action to cause the reappearance of the charge-off notations in August 2023.  (*Id.* ¶¶ 32-33.)  Plaintiff alleges that this re-reporting after a two-year hiatus makes the Accounts appear to have been recently charged off in August 2023, as opposed to 2019.  (*Id.* ¶¶ 26-30, 34.)  She asserts that a recent charge off has a more negative impact on an individual's credit score than an older one, (*id.* ¶ 31), although she does not allege any drop in her credit score following the re-reporting of the Accounts' charged-off status.

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, citations, alterations, and footnotes.

On September 6, 2023, Plaintiff disputed the Accounts with the CRAs, asserting that the Accounts were inaccurately reported as recent charge offs and requesting that the CRAs remove them from her credit reports.  (*Id.* ¶¶ 35-36.)  In the disputes, Plaintiff included a copy of her passport and a credit card statement to serve as proof of her identity.  (*Id.* ¶ 37.)  TransUnion and Experian responded by stating that the dispute did not appear to have been sent by Plaintiff or another authorized party.  (*Id.* ¶¶ 38, 40.)  Equifax responded by stating that the Account had been "updated," but there was no substantive change regarding the disputed issue.  (*Id.* ¶ 39.)

Plaintiff alleges on information and belief that the CRAs sent Chase notice of her dispute. (*Id.* ¶ 41.)  She asserts that, upon receipt of those letters, Chase failed to reasonably investigate the dispute to discover any inaccurate or misleading information, and Chase instead continued to furnish inaccurate and false information to the CRAs.  (*See id.* ¶¶ 42-43.)  Plaintiff further alleges upon information and belief that Chase did not know why the gap in the reporting of her charge offs occurred.  (*Id.* ¶ 46.)  Likewise, Plaintiff asserts that the CRAs did not evaluate or consider her dispute or verify that the information provided with respect to the Accounts was accurate.  (*Id.* ¶ 48.)  As a result, she contends, the CRAs have been reporting inaccurate information on Plaintiff's credit reports to various third parties, including potential credit grantors.  (*Id.* ¶¶ 50-51.)

In November 2023, Plaintiff applied for personal loans from three different lenders but was denied by each.  (*Id.* ¶¶ 55-57).  Plaintiff asserts that the purportedly inaccurate reporting of the Accounts as more recently charged off was a substantial factor in her inability to qualify for new credit, (*id.* ¶ 58), although she does not explain how she determined that the recency of the charge offs, as opposed to the fact of them, was significant.  She alleges that she has suffered the "loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications

for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial."  (*Id.* ¶ 59.)

### B.    Procedural History

On January 10, 2024, Plaintiff filed her initial Complaint, alleging that Defendants violated the Fair Credit Reporting Act ("FCRA").  (*See generally* ECF No. 1.)  All Defendants answered, (*see* ECF Nos. 18, 23, 26, 28), and then subsequently filed pre-motion letters in anticipation of their motions for judgment on the pleadings, (*see* ECF Nos. 30, 36).  At the pre-motion conference on April 16, 2024, I granted Plaintiff leave to amend the Complaint and set a briefing schedule for the motions.  (*See* Minute Entry dated April 16, 2024.)  On May 6, 2024, Plaintiff filed the FAC, (ECF No. 42), and the instant motions followed.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While Rule 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

### B.  Documents Properly Considered

When deciding a motion to dismiss under Rule 12(b)(6):

> a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.  For a document to be considered integral to the complaint, the plaintiff must rely on the terms and effect of a document in drafting the complaint[;] mere notice or possession is not enough.  And even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and it must be clear that there exist no material disputed issues of fact regarding the relevance of the document.

*United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021); *see Solano v. New York*, No. 20-CV-1378, 2021 WL 4134793, at *3 (N.D.N.Y. Sept. 10, 2021); *170 Mercer LLC v. Rialto Cap. Advisors, LLC*, No. 20-CV-2496, 2021 WL 1163649, at *2 (S.D.N.Y. Mar. 25, 2021).  A court may also consider "matters of which judicial notice may be taken."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

"Documents outside of the pleadings are not generally considered in the context of a motion to dismiss." *Noel v. Wal-Mart Stores, E. LP*., 764 F. App'x 17, 19 (2d Cir. 2019) (summary order).  But because a complaint includes "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint," *id.* at 20; *see Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 92 F.4th 415, 436 (2d Cir. 2024) ("In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."), the Court may consider the excerpted portions of the three credit reports submitted by the CRAs, (ECF No. 49-1 ("Experian Report"), ECF No. 49-2 ("Equifax Report), ECF No. 49-3 ("TransUnion Report")), which the FAC incorporates by reference and on which the FAC relies, (FAC ¶¶ 7-14, 18-36, 50-51, 54, 58, 63, 70), s*ee Krausz v. Equifax Info. Servs. LLC*, No. 21-CV-7427, 2023 WL 1993886, at *2 (S.D.N.Y. Feb. 14, 2023) (proper to consider, as incorporated or integral, credit report claimed to be inaccurate in FCRA complaint); *Friedman v. CitiMortg., Inc.*, No. 18-CV-11173, 2019 WL 4194350, at *2 (S.D.N.Y. Sept. 3, 2019) (proper to consider reinvestigation report submitted by defendant where plaintiff's reliance on report not disputed); *Mund v. Transunion*, No. 18-CV-6761, 2019 WL 955033, at *1 n.1 (E.D.N.Y. Feb. 27, 2019) (proper to consider credit report as integral to complaint and relied upon by plaintiff).

While Plaintiff argues that these credit reports are "cherry-picked" and not "ripe" to be fully analyzed, (ECF No. 54 ("P's Opp. to CRAs") at 8-9), she does not explain why, and I see no reason why the reports are not integral to the FAC.  Plaintiff concedes the relevance of the reports, (*id.* at 8), and does not challenge their authenticity – in other words, she denies the

accuracy of the content of the reports but does not dispute that the exhibits provided by the CRAs accurately reflect that content.  I will accordingly consider those exhibits.

## III.    <u>DISCUSSION</u>

### A.    <u>Claims Against Chase</u>

Plaintiff alleges that Chase willfully and negligently violated 15 U.S.C. § 1681s-2 by failing to comply with its duties as a furnisher of information under the statute.  (*See* FAC ¶¶ 74-93.)

Congress enacted the FCRA "amidst concerns about the accuracy of information disseminated by credit reporting agencies."  *Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91 (2d Cir. 2021).  As part of its objective to "ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy," the FCRA "places distinct obligations on three types of entities:  consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies."  *Rosenberg v. LoanDepot, Inc.*, No. 21-CV-8719, 2023 WL 1866871, at *3 (S.D.N.Y. Feb. 9, 2023).  "An entity that reports credit information about consumers to credit reporting agencies is known as a furnisher," *Krausz*, 2023 WL 1993886, at *11, and there is no dispute that Chase is a furnisher, (*see* ECF No. 46 ("Chase's Mem.") at 5 ("Chase is [a] furnisher of information under 15 U.S.C. § 1681s-2 of the FCRA.")).

The FCRA places two sets of obligations on furnishers of information.  First, under 15 U.S.C. § 1681s-2(a), the FCRA imposes a duty to "provide accurate information" to consumer reporting agencies.  This obligation prohibits a furnisher from reporting information that it knows or has reasonable cause to believe is inaccurate.  *See* 15 U.S.C. § 1681s-2(a)(1)(A).  It also prohibits a furnisher from reporting information that is, in fact, inaccurate if the consumer has notified the furnisher that the information is inaccurate.  *See id.* § 1681s-2(a)(1)(B).  In such

instances, the furnisher "may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." *Id.* § 1681s-2(a)(3). There is, however, no private right of action to enforce violations of § 1681s-2(a). *Sprague v. Salisbury Bank & Trust Co.*, 969 F.3d 95, 98-99 (2d Cir. 2020); *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) (*per curiam*); *Tunne v. Discover Fin. Servs., Inc.*, No. 22-CV-5288, 2024 WL 2960564, at *11 (S.D.N.Y. May 13, 2024) (collecting cases), *report & recommendation adopted sub nom. Tunne v. Disocver Fin. Servs., Inc.*, 2024 WL 2959285 (S.D.N.Y. June 10, 2024). Instead, the FCRA provides that § 1681s-2(a) shall be enforced exclusively by government agencies and officials. *Varlack v. Transunion*, No. 23-CV-6760, 2023 WL 6608980, at *3 (S.D.N.Y. Oct. 10, 2023) (section 1681s-2(a) "shall be enforced exclusively by government officials"); *see* 15 U.S.C. § 1681s-2(d). Therefore, to the extent Plaintiff seeks to bring any claims under § 1681s-2(a), those claims must be dismissed. *See Ngambo v. Chase*, No. 20-CV-2224, 2023 WL 1767463, at *4 (S.D.N.Y. Feb. 3, 2023).

Second, private plaintiffs may bring an action for willful or negligent noncompliance with § 1681s-2(b). *Neblett v. Chase Bank*, No. 09-CV-10574, 2010 WL 3766762, at *5 (S.D.N.Y. Sept. 27, 2010); *see* 15 U.S.C. § 1681n (willful noncompliance); *id.* § 1681o (negligent noncompliance). Under that statute, after the furnisher receives notice of a dispute with regard to the completeness or accuracy of any information provided to a consumer reporting agency, the furnisher must, among other things, "1) conduct an investigation with respect to the disputed information, 2) review all relevant information provided by the CRA, 3) report the results of the investigation to the CRA, and 4) if the investigation finds that the information is incomplete or inaccurate, report those results to all other CRAs that had received the information." *Potapova v. Toyota Motor Credit Corp.*, No. 23-CV-571, 2024 WL 4026216, at

*1 (S.D.N.Y. Sept. 3, 2024).  Put another way, a plaintiff must allege first that a furnisher received notice of a credit dispute from a CRA, and second that the furnisher either "acted in willful or negligent noncompliance with the statute."  *Krausz*, 2023 WL 1993886, at *11.[3]

An essential element for a § 1681s-2(b) claim is accuracy, and, thus, "a threshold showing of inaccuracy or incompleteness is necessary to succeed on a claim under § 1681s-2(b)."  *Artemov*, 2020 WL 5211068, at *3; *see Krausz*, 2023 WL 1993886, at *11.  "[A] credit report is inaccurate either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect."  *Shimon*, 994 F.3d at 91; *see Butnick v. Experian Info. Sols., Inc.*, No. 20-CV-1631, 2021 WL 395808, at *3 (E.D.N.Y. Feb. 4, 2021) (to the same effect).  In reviewing a plaintiff's credit reports to determine whether they are inaccurate, courts "must look at the credit reports as a whole."  *Deitsch v. Truist Bank*, No. 20-CV-6251, 2024 WL 22770, at *6 (E.D.N.Y. Jan. 2, 2024); *see Gross v. Priv. Nat'l Mortg. Acceptance Co., LLC*, 512 F. Supp. 3d 423, 426-27 (E.D.N.Y. 2021) (credit reports must be viewed as a whole, rather than viewing each tradeline entry in isolation).  Because the accuracy of disputed credit information is a threshold question, "if the information is accurate, no further inquiry is necessary."  *Lamando v. Rocket Mortg.*, No. 23-CV-147, 2024 WL 264034, at *5 (N.D.N.Y. Jan. 24, 2024).

---

[3] Plaintiff alleges on information and belief that the CRAs sent Chase notice of her dispute, (*see* FAC ¶ 41), and Chase confirms it received notice of the dispute from at least Equifax, (*see* Chase's Mem. at 3).  "Given the information asymmetry and the fact that credit reporting agencies are legally obligated to inform furnishers of disputes, an allegation that the plaintiff reported a dispute to a credit reporting agency and that (upon information and belief) the agency notified the furnisher of the dispute is sufficient to survive a motion to dismiss."  *Hart v. Equifax Info. Servs. LLC*, No. 19-CV-342, 2019 WL 4757325, at *4 (N.D.N.Y. Sept. 30, 2019); *see Childs v. BBVA USA Bancshares, Inc.*, No. 21-CV-975, 2021 WL 9080023, at *4 (N.D. Tex. Nov. 22, 2021) ("One may reasonably infer that at least one of those consumer reporting agencies followed the law and reported the dispute to [the furnisher].  That inference must be drawn in favor of [Plaintiff].").

Chase argues that Plaintiff does not and cannot allege that it furnished inaccurate information to the CRAs.  (*See* Chase's Mem. at 7-11.)  Specifically, Chase contends that it correctly furnished the Accounts' charged-off status and, regardless of any gap in reporting, it cannot be liable under the FCRA because the data that it *did* report was correct.  *See id.*  Chase may be correct that reporting the Accounts' charged-off status in August (or October) 2019 through July 2021 and then again in August 2023 is technically accurate and therefore not patently incorrect.  But the analysis does not end there.  "[R]eporting information which is factually accurate but misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions still constitutes a violation of § 1681s-2(b)."  *Mund*, 2019 WL 955033, at *3; *see Lewis v. Wells Fargo Bank, N.A.*, No. 22-CV-2851, 2023 WL 2599954, at *4 (E.D.N.Y. Mar. 22, 2023) ("[B]ecause a rule requiring only technical accuracy in credit reporting would contravene the legislative intent behind the FCRA, courts within this Circuit have also adopted the materially misleading standard, as opposed to a technical accuracy test, in their approach to the second-pronged, accuracy analysis.").  But "mere imprecision is not enough, rather, a plaintiff must establish that the information provided . . . is open to an interpretation that is directly contradictory to the true information."  *Krausz*, 2023 WL 1993886, at *11.

Plaintiff argues that Chase's re-reporting of the charge offs reduced her credit score because it made the charge offs appear to have occurred in August 2023 as opposed to in late 2019.  (*See* ECF No. 53 ("P's Opp. to Chase") at 5-8.)  She contends that Chase failed to provide "complete information" to the CRAs regarding the Accounts' charge offs, and the resulting two-year reporting gap is materially misleading to creditors who lack clarity about what happened during that hiatus.  (*See id.* at 10-11.)  Put another way, Plaintiff argues that Chase artificially created more recent delinquencies on her credit reports – showing the Accounts as

recently charged off in August 2023 – thereby artificially deflating her credit score and misleading potential lenders.  (*See id.* at 12.)

The FAC fails to state a claim under § 1681s-2(b).  While it is entirely plausible that a more recent charge off may be more detrimental to one's credit than an older charge off, the question is whether Plaintiff plausibly alleges that Chase reported misleading information that made the charge offs appear more recent than they actually were.  She does not.  "It is undisputed that an account can be charged off only once."  *Steinmetz v. Am. Honda Fin. Corp.*, 835 F. App'x 199, 201 (9th Cir. 2020); *see, e.g.*, *Lantos v. Equifax Info. Servs., L.L.C.*, No. 23-CV-240, 2024 WL 778819, at *3 (D. Me. Feb. 26, 2024) ("[I]it is unclear how any reasonable reader of someone's credit report could be misled into believing that multiple charge offs occurred when it is undisputed that a charge off occurs only once."); *Hickson v. Experian Info. Sols., Inc.*, No. 21-CV-370, 2023 WL 2734795, at *3 (D. Or. Mar. 31, 2023) (to the same effect); *Shelton v. AmeriCredit Fin. Servs., Inc.*, No. 23-CV-10543, 2023 WL 2761702, at *3 (E.D. Mich. Apr. 3, 2023) (to the same effect); *Thomason v. World Fin.*, No. 23-CV-109, 2023 WL 4375499, at *3 (W.D. Tex. July 6, 2023) ("Repeated reports of a single charge off event are not misleading because a bank's reporting of an account as charged off on a recurring basis only shows that the outstanding debt has yet to be repaid."), *report & recommendation adopted*, 2023 WL 4833482 (W.D. Tex. July 27, 2023); *Makela v. Experian Info. Sols., Inc.*, No. 21-CV-386, 2021 WL 5149699, at *3 (D. Or. Nov. 4, 2021) ("Plaintiff's argument conflates the initial charge off event with the continued reporting of an account's status as charged off.  A consumer's debt does not simply disappear when a creditor charges off her debt."); *Shaw v. Equifax Info. Sols.,*

*Inc.*, 204 F. Supp. 3d 956, 960-61 (E.D. Mich. 2016) ("[A]s all parties agree, there is only one charge off event.").[4]

Plaintiff does not dispute this point. (*See* P's Opp. to CRAs at 11 ("Plaintiff does not claim that an account can be charged off more than once.").) Rather, Plaintiff contends that the "overall view" of the Accounts makes them "appear more recently delinquent than they actually are due to the gap and re-reporting of charge-off notations." (P's Opp. to Chase at 6; *see* FAC ¶¶ 18, 26, 28-30, 34-36, 49, 58.) But this argument ignores what the reports actually show. After reporting the Accounts as "charged off" (or its equivalent) each month from August (or October) 2019 to July 2021, the reports then show "no data" (or its equivalent) each month from August 2021 to August 2023, after which "charged off" resumes. (Experian Report at 3; Equifax Report at 5-6; TransUnion Report at 3-4.)[5] Because an account can be charged off only once, it is implausible that anyone could read Plaintiff's credit reports and believe that the Accounts were charged off twice – once in 2019 and then again in 2023. *See Lantos*, 2024 WL 778819, at *3 ("[I]it is unclear how any reasonable reader of someone's credit report could be misled into believing that multiple charge offs occurred when it is undisputed that a charge off occurs only once.") (collecting cases). Chase's two-year silence during which it reported no data about the Accounts – and made no other affirmative statements during that "gap" – simply did not make it possible to charge off the already charged-off Accounts four years later or for any reasonable

---

[4] Plaintiff attempts to distinguish these cases because they did not involve a similar "gap" in reporting the Accounts' charge-off notations. (*See* P's Opp. to CRAs at 13-17.) But Defendants cite these cases for a simple point: a charge off is a one-time event no matter how many times the status is reported. In other words, a gap in reporting does not change when a charge off occurs, nor does it permit an account to be charged off a second time.

[5] Citations to page numbers for the Experian, Equifax, and TransUnion reports refer to the page numbers generated by the Court's Electronic Case Filing system.

lender to think so.  Chase was simply silent for two years, and when it spoke up again, it

accurately reported the Accounts as still charged off.  The FAC simply does not allege any facts

rendering it plausible that any creditor would or could construe the reports as showing that the

Accounts were charged off for a second time in August 2023.

It is similarly implausible that a lender could read Plaintiff's credit reports as showing

that the Accounts were charged off for the first time in 2023.  Looking at the reports as a whole,

it is obvious that the Accounts were charged off in 2019, for several reasons.  First, the reports

show month-by-month notations of the Accounts' statuses, showing the notation "CO," or "L,"

or "C/O" – each signifying that the respective account was charged off – starting in 2019.  (*See*

Experian Report at 3 (using "CO" notation); Equifax Report at 4-6 (using "L" notation);

TransUnion Report at 3-4 (using "C/O" notation).)  Second, the reports each state the Accounts'

status as charged off and delinquent beginning in 2019.  (*See* Experian Report at 3 ("Status (Oct

2019) Account charged off."; "Status (Aug 2019) Account charged off."); Equifax Report at 5-6

(listing the status of each account as "Charge Off" and noting that major delinquency first

reported in October and August 2019); TransUnion Report at 3-4 (noting the pay status as

"Charged Off" and that the "maximum delinquency" occurred in July and September 2019 for

respective Accounts).)  Next, the reports state the last payment dates for the Accounts in late

2018 and early 2019, and that the Accounts were closed by the credit grantor.  (*See* Experian

Report at 3; Equifax Report at 5-6; TransUnion Report at 3-4.)  Finally, at least Experian's and

TransUnion's reports list the end of 2025 and early 2026 as the estimated dates when reporting

of the Accounts will cease and be removed from the reports, (*see* Experian Report at 3;

TransUnion Report at 3-4), which further supports that the charge offs occurred seven years

earlier in 2019, *see Lantos*, 2024 WL 778819, at *3 ("Under the [FCRA], consumer reporting

agencies may not report accounts placed for collection or charged to profit and loss which

antedate the report by more than seven years.") (citing 15 U.S.C. § 1681c(a)(4)); *Shelton*, 2023

WL 2761702, at \*3 ("FCRA allows charged-off accounts to be reported for seven years . . . .").

Thus, all these notations make it apparent to the reader that the charge offs occurred in 2019, not

2023. *See Ostreicher*, 2020 WL 6809059, at \*4.

Plaintiff does not otherwise allege or explain how any reasonable person could or would

think that a second charge off occurred in 2023, or that the Accounts were not charged off in

2019, or that they were instead charged off in 2023 for the first time.  Chase reported accurate

information to the CRAs because the Accounts were charged off in 2019 and remained charged

off in 2023, regardless of any gap in the reporting.  A potential creditor would thus not be

misled, and instead would be "provided accurate information:  (1) that plaintiff still owes a past

due balance on the debt; and (2) that plaintiff's willingness and ability to pay back a potential

loan are questionable because, at any given moment, [Chase] (or a third-party purchaser) could

decide to seek enforcement of the remaining delinquent balance." *Artemov*, 2020 WL 5211068,

at \*5.

In her papers, Plaintiff argues that the two-year gap "artificially" reduced her credit score,

(P's Opp. to Chase at 7, 12; P's Opp. to CRAs at 7, 13), when the charge-off notations

recommenced in August 2023, (*see* P's Opp. to Chase at 5-8, 15; P's Opp. to CRAs at 5-8, 13,

16).  If that were true, and if no other activity accounted for the change, it might suggest that

whatever entity reduced her score regarded the reports as indicating a new charge off.  But the

FAC contains no allegations about any such drop in Plaintiff's credit score, and "[i]t is well-

settled that a plaintiff cannot amend [her] complaint by asserting new facts or theories for the

first time in opposition to a motion to dismiss." *Peacock v. Suffolk Bus Corp.*, 100 F. Supp. 3d

225, 231 (E.D.N.Y. 2015); *see Weir v. Cenlar FSB*, No. 16-CV-8650, 2018 WL 3443173, at *6

(S.D.N.Y. July 17, 2018) ("A plaintiff may not amend the complaint via a memorandum of

law[.]"); *In re China Mobile Games & Ent. Grp., Ltd. Sec. Litig.*, No. 14-CV-4471, 2016 WL

922711, at *5 n.9 (S.D.N.Y. Mar. 7, 2016) ("Plaintiffs, likely realizing the weaknesses in the

Complaint, attempt to improperly plead new facts in their Opposition to the Motion to Dismiss. .

. . The Court does not consider these allegations because they were not part of the Complaint.").[6]

In fact, Plaintiff seemingly concedes that she lacks the facts necessary to support such a claim, in

that she states that "[t]he details of Plaintiff's credit score drop are facts that Plaintiff intends to

develop throughout discovery."  (P's Opp. to Chase at 7 & n.2; P's Opp. to CRAs at 7 & n.2.)

But she puts the cart before the horse:  under the *Iqbal* standard, "a plausible claim must come

*before* discovery, not the other way around."  *Angiulo v. County of Westchester*, No. 11-CV-

7823, 2012 WL 5278523, at *3 n.4 (S.D.N.Y. Oct. 25, 2012) (emphasis in original); *see Neala

Commc'ns LLC v. Xerox Corp.*, No. 22-CV-6088, 2024 WL 4042092, at *4 (W.D.N.Y. Sept. 4,

2024) (collecting cases).[7]  While Plaintiff argues that Chase has not explained the reason for the

---

[6] Plaintiff also alludes to the use of credit scoring algorithms that lenders use to make their decisions.  (*See* P's Opp. to Chase at 5, 11; P's Opp. to CRAs at 12.)  But the FAC does not allege any facts about such algorithms or otherwise provide facts rendering it plausible that a lender's algorithm would treat the Accounts as being charged off in 2023.  In any event, "the question the Court must answer is whether the credit report[s are] misleading, not whether some third party could read the credit report[s] incorrectly," and "there is no way for the Court to control the way people read a credit report, nor is there a way for the Court to know what quirk of computer programming leads a particular algorithm to draw particular conclusions from aspects of a computer report."  *Krausz*, 2023 WL 1993886, at *14; *see O'Neal v. Equifax Info. Servs., LLC*, No. 21-CV-80968, 2021 WL 4989943, at *3 (S.D. Fla. Oct. 27, 2021) ("How third-party companies choose to utilize algorithms to decipher the accurate information reported by [CRAs] has no bearing on the accuracy of the report itself.").

[7] Nor does Plaintiff's rejection for credit in November 2023, (*see* FAC ¶¶ 55-57), aid her in showing that anybody regarded her charge offs as occurring in 2023.  She provides no facts suggesting that the rejections of her loan applications were based on a belief that she had incurred charge offs in 2023, as opposed to the undisputed fact that in 2019 she incurred charge

gap in reporting, (*see* P's Opp. to Chase at 11), "the Court's task is to consider whether the information is inaccurate or misleading, not to look for ways that the information might be *more accurate*." *Lamando*, 2024 WL 264034, at *8 (emphasis in original).  Plaintiff's curiosity does not justify discovery on this issue when – regardless of the answer – Chase did not furnish misleading information.

Because Plaintiff has failed to show that Chase's reporting was inaccurate or misleading, the Court need not consider the remaining elements of Plaintiff's § 1681s-2(b) claim, *see Deitsch*, 2024 WL 22770, at *7; *Butnick*, 2021 WL 395808, at *5, and Plaintiff's claims against Chase must be dismissed.

### B.     Claims Against Experian, Equifax, and TransUnion

Turning to the CRAs, Plaintiff alleges that those entities violated 15 U.S.C. § 1681(e) by failing to follow reasonable procedures to ensure the accuracy of her credit reports, (FAC ¶¶ 61-63), and also violated § 1681i(a) by failing to delete purportedly inaccurate information from Plaintiff's credit report after receiving notice of the inaccuracies, (*id.* ¶¶ 68-70).  The CRAs move to dismiss on grounds similar to Chase:  that because an account cannot be charged off more than once, it is not plausible that a lender would be misled about when the Accounts were charged off.  (*See* ECF No. 48 at 15-18.)  Plaintiff raises a similar response:  that the CRAs misled lenders and artificially deflated her credit score by re-reporting the charge offs after the two-year gap, which made the charge offs appear more recent than they were.  (*See* P's Opp. to CRAs at 5-8; 11-12.)

---

offs of $58,610 and $1,712, (*see* Experian Report at 3; Equifax Report at 5-6; TransUnion Report at 3-4; FAC ¶¶ 17, 19-20, 34), or some other reason.

As with violations of § 1681s-2(b), the threshold question for claims under §§ 1681(e)(b) or 1681i(a) "is whether the disputed credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedure is necessary." *Desmarattes v. Equifax*, No. 22-CV-3330, 2023 WL 8473362, at *7 (E.D.N.Y. Dec. 7, 2023); *see Potapova*, 2024 WL 4026216, at *1 ("[A] prerequisite for any FCRA claim is that the challenged credit information is incomplete or inaccurate."). For the same reasons discussed above, the FAC does not plausibly allege that the CRAs reported inaccurate or misleading information about the charged-off Accounts. Thus, Plaintiff's claims against the CRAs fail to satisfy the threshold requirement. *See Desmarattes*, 2023 WL 8473362, at *9 (no plausible claim under §§ 1681e(b) or 1681i where plaintiff did not allege facts showing that credit reports were inaccurate); *Butnick*, 2021 WL 395808, at *5 (to the same effect); *Khan v. Equifax Info. Servs., LLC*, No. 18-CV-6367, 2019 WL 2492762, at *4 (E.D.N.Y. June 14, 2019) ("Plaintiff fails to state a claim pursuant to sections 1681e(b) and 1681i because he has not alleged facts showing that the information that [Equifax] reported about him is inaccurate."); *see also Shimon*, 994 F.3d at 92 ("The accuracy of [Plaintiff's] credit report is fatal to his § 1681e(b) claims that Equifax engaged in willful or negligently inaccurate reporting."). Because Plaintiff has not plausibly alleged that the disputed credit information in the CRAs' reports was inaccurate, "no further inquiry into the reasonableness of the consumer reporting agenc[ies'] procedure[s] is necessary," *Desmarattes*, 2023 WL 8473362, at *9; *see Butnick*, 2021 WL 395808, at *5, and Plaintiff's claims against the CRAs must be dismissed.

**C.    Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to

amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally

granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments

previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*,

514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended her complaint once, after having the benefit of Defendants'

pre-motion letters outlining the grounds on which Defendants planned to move to dismiss, (ECF

Nos. 30, 36), and the discussions at the April 16, 2024 pre-motion conference, (*see* Minute Entry

dated April 16, 2024).[8] In general, a plaintiff's failure to fix deficiencies in the previous

pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend.

*See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir.

2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended,

he clearly has no right to a second amendment even if the proposed second amended complaint

in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be

imposed upon by the presentation of theories *seriatim*."); *see also Baines v. Nature's Bounty*

*(NY), Inc.*, No. 23-CV-710, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) (no abuse of

discretion where plaintiffs "already amended their complaint once in the face of a pre-motion

letter from Defendants," and then "requested leave to amend again in a single, boilerplate

sentence without specifying what allegations they could add or how amendment would cure any

deficiencies"); *Bardwil Indus. Inc. v. Kennedy*, No. 19-CV-8211, 2020 WL 2748248, at *4 n.2

(S.D.N.Y. May 27, 2020) (dismissing with prejudice where plaintiff amended following pre-

motion letters and pre-motion conference that identified the deficiencies resulting in dismissal).

---

[8] Indeed, at the pre-motion conference, Plaintiff's counsel pointed to the purported drop
in credit score and the algorithms' purported interpretation of the CRA reports as lending
plausibility to the claim, but then included no such facts in the FAC.

Moreover, Plaintiff has not asked to amend again or otherwise suggested that she is in possession of facts that would cure the deficiencies identified in this ruling. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if [she] fails to specify . . . how amendment would cure the pleading deficiencies in [the] complaint."); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend); *GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321, 2023 WL 2051739, at *21 (S.D.N.Y. Feb. 16, 2023) (denying leave to amend where plaintiff "already amended its complaint in response to Amazon's pre-motion letter detailing the bases for its anticipated motion to dismiss" and did not seek leave to amend again); *Olsen v. Sherry Netherland, Inc.*, No. 20-CV-103, 2022 WL 4592999, at *15 (S.D.N.Y. Sept. 30, 2022) (denying leave to amend where plaintiff did not "explain how any amendment would cure the deficiencies identified by the Court").

Accordingly, the Court declines to grant Plaintiff leave to amend *sua sponte*. *See Bruno v. Metro. Transp. Auth.*, 344 F. App'x 634, 636 (2d Cir. 2009) (summary order) (district court not required to *sua sponte* grant leave to amend); *In re Am. Exp. Co. S'holder Litig.*, 39 F.3d 395, 402 (2d Cir. 1994) (no abuse of discretion in not *sua sponte* granting leave to replead).

**IV.**    **CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED. The Clerk of

Court is respectfully directed to terminate the pending motions, (ECF Nos. 45, 47), and close the

case.

**SO ORDERED.**

Dated: January 27, 2025
       White Plains, New York

                                               _____
                                               CATHY SEIBEL, U.S.D.J.